IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BERNARD HUBBARD                                                                        PETITIONER

VS.                                                         CIVIL ACTION NO. 3:17cv53-CWR-FKB

SUPERINTENDENT
JACQUELYN BANKS, et al.                                                               RESPONDENTS

## **REPORT AND RECOMMENDATION**

### I.  INTRODUCTION AND HISTORY

This is an action for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by Bernard Hubbard, a state prisoner.  Having considered the petition as amended, the responses to the petition, and Hubbard's replies, the undersigned recommends that habeas relief be denied.

T.D. lived with her mother and her younger brother.  From T.D.'s infancy, her mother maintained a relationship with Bernard Hubbard, who often stayed in their home. T.D., who was sixteen at the time of trial, testified that when she was eight years old, Hubbard began groping her, kissing her, and licking her genitals.  Eventually, these encounters progressed to penile penetration.  Hubbard made T.D. "pinky swear" not to tell anyone about his actions, and T.D. complied for a time out of fear.  She testified that she did not say anything also because she thought her mother would not believe her. However, around September of 2008, when she was eleven years old, T.D. told a teacher and counselor at her elementary school about some of Hubbard's actions, although she was still too frightened to admit that Hubbard had penetrated her. Following her disclosures, T.D. was interviewed at the Mississippi Child Advocacy

Center (CAC).  After T.D.'s mother failed to cooperate with the investigation and lied regarding Hubbard's presence in the home, T.D. was removed from the home and placed in foster care, and a no-contact order was issued for both her mother and Hubbard.  When T.D.'s aunt learned of the situation, she contacted law enforcement, helped them locate Hubbard, and obtained custody of T.D..

In early 2010, when she was in the sixth grade, T.D. was allowed to move back in with her mother. However, the no-contact order regarding Hubbard remained in place.  T.D. testified that within a couple of weeks of her return, Hubbard began coming to the home again and making sexual contact with her.  T.D.'s mother insisted that T.D. keep quiet, threatening to move out of state and leave her alone if she told anyone about the family's "business."  In March of 2010, T.D. reported to a school official that Hubbard had raped her.  She was taken to a hospital for an examination and was interviewed again at CAC.  Authorities initially had trouble locating Hubbard, but a fugitive task force eventually located him and took him into custody.  T.D. was returned to the custody of her aunt.

Hubbard was indicted in the Circuit Court of Hinds County, Mississippi, in separate one-count indictments for gratification of lust and sexual battery involving a child under the age of 14.  A jury convicted him on both counts, and the court sentenced him to 15 years on each conviction, the sentences to run consecutively.  Hubbard's convictions and sentences were affirmed on appeal. *Hubbard v. State*, 176 So. 3d 1181 (Miss. Ct. App. 2015).  He then filed the present petition pursuant to 28 U.S.C. § 2254, asserting four grounds for relief.  After Respondents filed a motion to dismiss the

2

petition as a "mixed" petition, that is, as having both exhausted and unexhausted claims, Petitioner amended his petition to remove ground four, the unexhausted claim. Thereafter he raised ground four in a state motion for post-conviction relief (PCR). After the state court denied his PCR motion, this court allowed Petitioner to amend his petition to reassert ground four. His four grounds for relief now before the Court are as follows:

1. The trial court erred in allowing testimony regarding his two prior convictions for gratification of lust.

2. The evidence was insufficient to convict.

3. The verdict was against the weight of the evidence.

4. He is entitled to habeas relief because of the following "new evidence":

    (1) His sentence is illegal because the prosecutor failed to disclose the evidence regarding his prior bad acts.

    (2) Biological evidence was excluded at trial.

    (3) He was denied an expert witness.

    (4) The trial court erred in allowing T.D.'s mother to testify against him.

## II. ANALYSIS

Grounds one through three were adjudicated on the merits by the state court in Hubbard's direct appeal, and ground four was adjudicated on the merits in his PCR proceeding. Therefore, this court's review is subject to the highly deferential standard set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of Hubbard's claims involved "an unreasonable application of . . . clearly established

Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court. 28 U.S. C. § 2254(d). The Supreme Court has repeatedly emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect but also "objectively unreasonable." *Id.* at 409. Under this deferential standard, federal relief is precluded so long as "fairminded jurists could disagree" on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### *Ground One: Evidence of Prior Bad Acts*

Hubbard had two prior convictions for gratification of lust. The state filed a pretrial motion *in limine* requesting to be allowed to present evidence of the prior convictions and testimony by the victims; the defense filed a corresponding motion to exclude this evidence. After a hearing and a proffer of the testimony, the court allowed the evidence to be admitted, ruling that while it could not be admitted for the purpose of proving character or showing that Hubbard had acted in conformity with his prior acts, it could be admitted under Miss. R. Evid. 404(b) for the purposes of showing motive,

4

opportunity, intent, scheme, and pattern. [20-4] at 64. At the end of the testimony of each witness, the court gave a limiting instruction as to the purpose for which the jury could consider the evidence. [20-4] at 82-83, 91.

Hubbard's biological daughter testified that Hubbard began fondling her and digitally penetrating her when she was in the first grade. By the time she was 13 years of age, he had begun engaging in penile penetration of her. Hubbard made her swear on the Bible not to tell anyone and threatened to hurt her mother if she told. Eventually, she told her mother, and criminal proceedings were initiated.

Another victim's story was similar. She testified that when she was a child, Hubbard dated her aunt, with whom she sometimes stayed. Hubbard began touching and fondling her when she was nine years old. He progressed to oral sex and then to penile penetration. She testified that she had had intercourse with him four times by age 10. Hubbard convinced her not to tell her mother by telling her that her aunt knew and approved of his actions. She disclosed his actions to her mother after her mother found money Hubbard had given her and questioned her about it.

In ground one, Hubbard contends that he is entitled to habeas relief because of the trial court's admission of the testimony of these two victims. He does not, however, give any further details as to his argument. In his direct appeal in state court, he argued that the trial judge had erred by failing to conduct the required balancing test to determine whether the probative value of the evidence was outweighed by its prejudicial effect.

State evidentiary errors, in and of themselves, do not provide a basis for federal habeas relief. *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983). Rather, a state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir.1999). A trial that is fundamentally unfair is one that is "largely robbed of dignity due a rational process." *Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984) (internal citation omitted). Furthermore, the Fifth Circuit has held that the admission of other crimes evidence does not violate due process if the state makes a strong showing of guilt and if the other offense is "rationally connected with the offense charged." *Wood v. Quarterman*, 503 F.3d 408, 415 (5th Cir. 2007).

Here, the state made a strong showing that Hubbard had committed the charged crimes. Furthermore, the prior offenses testified to by the victims were rationally related to the charged offenses, in that they showed a common motive and method: The molestation of prepubescent girls to whom he had access in a family situation; his practice of initially approaching them by fondling and performing oral sex, and then later progressing to penile penetration; and his insistence that the victims swear not to tell anyone about his actions. The trial judge explained to the jury the purpose of the testimony and gave an appropriate limiting instruction. Under these circumstances, it cannot be said that the admission of the testimony rendered Hubbard's trial fundamentally unfair. The state court's rejection of this claim was not objectively unreasonable.

***Grounds Two and Three: Sufficiency of the Evidence and Weight of the Evidence***

In grounds two and three, Hubbard contends that there was insufficient evidence to support the verdict and that the verdict was against the overwhelming weight of the evidence. The latter allegation does not raise a cognizable habeas claim. It is well established that "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence." *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Hubbard makes no specific argument in support of his insufficiency argument. However, in his direct appeal, Hubbard's argument was based upon alleged inconsistencies in T.D.'s allegations. T.D. admitted in her testimony that in her interviews at CAC, she had not always disclosed the whole truth of Hubbard's physical contact with her. She testified that in her first interview, in 2008, she had failed to disclose some of the encounters, including those involving penetration, and had maintained that her clothes had never come off. She also admitted that in her 2010 interview at CAC, she initially failed to disclose the penetration. T.D. stated that she left out some of these details because of fear. There was also at times a lack of clarity and some possible inconsistencies in T.D.'s testimony. For example, at one point when being questioned about the 2010 incidents, she contradicted her previous testimony by responding in the negative when questioned about whether Hubbard ever touched her with his hands or penetrated her with his penis when she was back living with her mom. [20-3] at 86-89.

7

Habeas relief is available for insufficiency of the evidence only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This is a high standard, and it is not met in this case. Despite some confusion and inconsistencies, T.D.'s testimony was nevertheless detailed and compelling. Furthermore, the testimony of other witnesses was consistent with T.D.'s testimony. Detective Jerrick Taylor, a special victims child protection detective who was present at both CAC interviews, testified that T.D.'s statements were consistent with those of a child who has been sexually abused. T.D.'s aunt testified as to the emotional impact Hubbard's actions had on T.D. T.D.'s mother, testifying under subpoena for the state, admitted that she had not believed T.D. nor protected her because she "wasn't thinking" and was "naïve." [20-4] at 26, 38. Finally, the testimony of the two prior victims showed a remarkably similar pattern of motive, intent, and plan on Hubbard's part. Given this evidence, it cannot be said that no rational juror could have found Hubbard guilty beyond a reasonable doubt. Thus, the state court's denial of relief on this ground did not constitute an unreasonable application of *Jackson*.

### *Ground Four: New Evidence*

Ground four of Hubbard's petition consists of several unrelated allegations, all of which he has categorized as being based upon "new evidence." However, none of these allegations appears to relate to evidence that has become available since his trial. Furthermore, most are unsupported by the record, and none warrant habeas relief.

Hubbard first claims that his sentence is illegal because the prosecutor failed to disclose the "other crimes" evidence to him prior to trial. This is flatly refuted by the record, which contains the prosecution's pretrial motion seeking to be allowed the testimony of the other victims, as well as Hubbard's corresponding motion to have their testimony excluded. [20-1] at 22, 105.

Two of Hubbard's allegations concern evidence which he now says should have been admitted at trial. First, he claims there exists biological evidence that the trial judge would not permit to be presented. Hubbard is apparently referring to the results of the rape kit tests performed on T.D. in March of 2010 after she reported that Hubbard had penetrated her. The transcript of the hearing on the pretrial motions indicates that the test results were negative for semen, as does the copy of the lab report attached to Hubbard's petition. [20-2] at 51-52, [2-1] at 20. Neither the state nor the defense sought to introduce these results at trial. He also alleges that he was "denied an expert witness." His petition gives no further details; however, his "Traverse to the Return," [36], indicates that the gravamen of this allegation is that several of the potential witnesses identified by the state were not called to testify.[1] Obviously, it was the defense's responsibility to secure the attendance at trial of any witnesses whose testimony it desired to use. Instead, the defense called no witnesses. Hubbard cannot complain that the trial court failed to admit evidence that the defense never sought to introduce, and his allegations raise no constitutional issue. To the extent that he is

---

[1] Hubbard identifies these witnesses as Gloria Harper, a neighbor; Drew Rutledge and Priscilla Trigg, Department of Human Services social workers; Dr. B. May, a physician who examined T.D.; and LaTonya Thomas, the forensic scientist who prepared the rape kit analysis. [36] at 5.

complaining about his attorney's failure to call witnesses or introduce evidence, any such claims would be procedurally barred, as he has never properly exhausted claims of ineffective assistance concerning these matters.  *See Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Finally, Hubbard argues that his rights were violated because the court allowed T.D.'s mother to testify against him.  Hubbard apparently believes that a state law of spousal privilege was violated by her testimony. Although there was some testimony regarding a wedding ceremony between Hubbard and T.D.'s mother, they apparently were not legally married.[2]  In any event, whether or not a privilege applied to her testimony is purely a matter of state law and raises no constitutional issue.

In summary, Hubbard's allegations in ground four are without basis in either law or fact.  The state court's rejection of ground four was objectively reasonable, and no relief is warranted.

### III.  CONCLUSION

Hubbard has not shown that the state court's adjudication of his claims was contrary to, or involved unreasonable applications of, clearly established Supreme Court law or was based upon an unreasonable determination of the facts. Accordingly, the undersigned recommends that habeas relief be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report

---

[2] The indictment for gratification of lust initially referred to Hubbard as the victim's stepfather.  [28] at 32. Prior to trial, the state moved to have the reference stricken on the basis that although Hubbard and T.D.'s mother had had a wedding ceremony, no marriage license had ever been issued.  [20-2] at 11-12. In her testimony, T.D.'s mother never identified or referred to Hubbard as her husband.

10

and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R.  Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 28th day of January, 2019.

                                    s/ F. Keith Ball  _____
                                    United States Magistrate Judge